UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Jason Trythall

    v.                            Civil No. 11-cv-458-JD

James O'Mara, Superintendent,
Hillsborough County Department
of Corrections

## REPORT AND RECOMMENDATION

Jason Trythall filed this action, pursuant to 42 U.S.C. § 1983, alleging that his rights were violated during his incarceration at the Hillsborough County Department of Corrections ("HCDC").  The complaint (doc. no. 1) is before the court for preliminary review to determine, among other things, whether Trythall has stated any claim upon which relief may be granted.  See 28 U.S.C. § 1915A(a); United States District Court District of New Hampshire Local Rule ("LR") 4.3(d)(2).

### Standard of Review

Under LR 4.3(d)(2), when an incarcerated plaintiff commences an action pro se, the magistrate judge conducts a preliminary review.  The magistrate judge may issue a report and recommendation after the initial review, recommending that the

complaint be dismissed, if the court lacks subject matter
jurisdiction, the defendant is immune from the relief sought,
the complaint fails to state a claim upon which relief may be
granted, the allegation of poverty is untrue, or the action is
frivolous or malicious.  See LR 4.3(d)(2) (citing 28 U.S.C.
§ 1915A and Fed. R. Civ. P. 12(b)(1)).  In conducting a
preliminary review, the magistrate judge construes pro se
pleadings liberally, to avoid inappropriately stringent rules
and unnecessary dismissals.  See Erickson v. Pardus, 551 U.S.
89, 94 (2007) (per curiam).

To determine if the complaint states any claim upon which
relief could be granted, the court applies a standard analogous
to that used in reviewing a motion to dismiss filed under Fed.
R. Civ. P. 12(b)(6).  The court decides whether the complaint
contains sufficient factual matter, accepted as true, to state a
claim to relief that is plausible on its face.  See Ashcroft v.
Iqbal, 556 U.S. 662, ___, 129 S. Ct. 1937, 1949 (2009).

To make this determination, the court employs a two-pronged
approach.  See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1,
12 (1st Cir. 2011).  The court first screens the complaint for
statements that "merely offer legal conclusions couched as fact
or threadbare recitals of the elements of a cause of action."

Ocasio-Hernández, 640 F.3d at 12 (citations, internal quotation marks and alterations omitted).  The second part of the test requires the court to treat as true all non-conclusory factual allegations, even if "seemingly incredible," and to consider those allegations along with all reasonable inferences drawn therefrom, construed in plaintiff's favor, in determining if the claim is plausible.  Id.  The plausibility requirement "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of illegal conduct.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007).  The "make-or-break standard" is that those allegations and inferences, taken as true, "must state a plausible, not a merely conceivable, case for relief."  Sepúlveda-Villarini v. Dep't of Educ., 628 F.3d 25, 29 (1st Cir. 2010); see Twombly, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." (internal citations and footnote omitted)).

Evaluating the plausibility of a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Iqbal, 129 S. Ct. at 1950 (citation omitted).  In doing so, the court may not

disregard properly pleaded factual allegations or "attempt to forecast a plaintiff's likelihood of success on the merits." Ocasio-Hernández, 640 F.3d at 13.  "The relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint."  Id.

### Background

Trythall was incarcerated at the HCDC on June 26, 2011, to await trial on misdemeanor charges of making a false report to a police officer and two counts of violating a restraining order concerning his ex-girlfriend, Suzanne Winslow.  Trythall alleges that at the time he was admitted to the HCDC, he wrote his "PIN" number and inmate number on a piece of paper and put it with his legal paperwork.[1]  In his legal paperwork, Trythall also had a copy of the restraining order, on which was Winslow's phone number.

Trythall alleges that after approximately a month at the HCDC, jail personnel, believing Trythall to be suicidal, transferred him to Unit 1C, a medical unit.  On Unit 1C, Trythall was locked down twenty-three hours a day and was not

---

[1]An HCDC inmate's PIN number allows the inmate to make phone calls from the facility, and also allows the jail to track calls made using a particular PIN number.

able to make phone calls, as he was given out-of-cell-time at 10:00 p.m., after the phones were shut off for the day.

While on Unit 1C, Trythall realized that the paper on which he had written his PIN number and inmate number was missing. Further, Winslow's contact information had been torn off of the restraining order.

Trythall made several unsuccessful written requests to have his PIN number changed.  Several days after he first requested a new PIN number, Trythall was called into Sgt. Jordan's office. Jordan told Trythall that he had received a call from the Nashua Police Department stating that Trythall was calling Winslow from the jail.  Trythall denied the accusation, explaining to Jordan that his PIN number and Winslow's phone number had been stolen. Jordan did not believe Trythall and told him not to call Winslow.

The following day, Trythall was reclassified to Unit 2A where he was again locked down twenty-three hours a day, and only allowed out of his cell after 10:00 p.m.  Trythall was eventually reclassified to Unit 1D, where he was able to use the phone before 10:00 p.m.  Trythall called his attorney and discovered that his PIN number had not been changed.

On August 16, 2011, Trythall was moved to Unit 2A by C.O.s Ellis and Larrabee and Sgt. Gordon.  On the way, Ellis pushed Trythall against the wall and dared Trythall to fight back so that he could split Trythall's lip.  Also, Ellis and Larrabee began to talk about dates they had planned for that evening, with Ellis using vulgar sexual language.  Gordon made an exceptionally vulgar comment, stating that but for Trythall's unattractiveness, Gordon would have engaged in a particular sexual act that would have involved Trythall.

Once on Unit 2A, Trythall was placed in a cell and strip searched.  Trythall alleges that during the strip search Gordon made fun of Trythall's facial appearance.  Gordon also made fun of Trythall's genitals and buttocks in an unspecified manner.

On August 18, 2011, while his original charges were still pending, Trythall was arraigned in the Nashua District Court on twelve counts of stalking.  The charges were based on phone calls Trythall allegedly made to Winslow from the jail.

Trythall was returned to the HCDC after his arraignment. On August 19, 2011, Trythall was reclassified to Unit 2B, a maximum security unit.  An officer told Trythall that he was moved so that he could be closely monitored due to his having made phone calls to Winslow while housed on other units.

On August 26, 2011, Trythall went to court for a scheduled trial on his original charges.  Trythall's attorney, a public defender, negotiated an eight month sentence for Trythall's guilty plea in the original case, and on two of the new stalking charges, in a deal that would resolve all of his pending charges.  Trythall expressed his belief to his attorney that he could prove his innocence at trial, but then decided to accept the plea offer because his attorney said that Trythall would otherwise get a twenty-four month sentence.  Trythall states that his attorney was coercive in his attempts to get Trythall to plead guilty, and that he believes his attorney was working against him.

Trythall believed he would be returned to Unit 1D at the HCDC after his conviction.  Upon his arrival at the jail, however, he was told by another inmate that the officers intended to house Trythall in maximum security again due to the phone calls to Winslow.

Once back at the HCDC, Trythall spoke with Sgt. Martinu, who told Trythall that he intended to call the Manchester Police Department to discuss whether new charges would be pressed against Trythall.  Trythall understood this statement to be a

threat by Martinu to bring new criminal charges against Trythall.

## The Claims[2]

Trythall raises the following claims for relief in his complaint (doc. no. 1):

1.    HCDC officials violated Trythall's Fourteenth Amendment due process rights by failing to adequately address the theft of Trythall's PIN number until after that theft had resulted in new criminal charges against Trythall.

2.    Trythall was subjected to verbal harassment and threats when: (a) C.O.s Ellis and Larrabee and Sgt. Gordon verbally taunted and harassed Trythall during a transfer between units; and (b) when Martinu threatened to bring new charges against Trythall.

3.    Sgt. Gordon conducted an improper strip search by making fun of Trythall's genitals and buttocks during the search, in violation of Trythall's Fourth Amendment right not to be subjected to an unreasonable search.

---

[2]The claims, as identified herein, will be considered to be the claims raised in the complaint (doc. no. 1) for all purposes.  If Trythall disagrees with the claims as identified, he must do so by properly filing an objection to this report and recommendation or a motion to amend his complaint.

4.   Trythall was improperly placed in maximum security as punishment for allegedly making phone calls to Winslow prior to being convicted of that offense, in violation of Trythall's Fourteenth Amendment right to due process.

5.   Trythall was improperly classified as a maximum security inmate at the HCDC after he was sentenced, in violation of Trythall's Fourteenth Amendment right to due process.[3]

6.   Trythall's attorney coerced Trythall to plead guilty to offenses that he did not commit, in violation of Trythall's Sixth Amendment rights to a jury trial and to the effective assistance of counsel.

## Discussion

I.   Section 1983

A government official may be held personally liable under 42 U.S.C. § 1983 if, acting under color of state law, the

---

[3]Trythall characterizes this claim as a challenge to being punished twice for the same offense, once by the court sentencing him to jail, and again by the jail in classifying him to maximum security.  While Trythall's claims, as stated, imply an intention to assert a "double jeopardy" claim, no such claim exists.  See Weiker v. Winn, No. Civ.A. 02-40024-RWZ, 2003 WL 345353, *1 (D. Mass. Feb. 14, 2003); Sawyer v. Jeffries, 315 F. App'x 31, 33 (10th Cir. 2008).  The court therefore construes the claim as a due process challenge to Trythall's classification level.

official caused the deprivation of a federal constitutional or

statutory right.  Section 1983 states, in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory or the District of Columbia, subjects, or
> causes to be subjected, any citizen of the United
> States or other person within the jurisdiction thereof
> to the deprivation of any rights, privileges, or
> immunities secured by the Constitution and laws, shall
> be liable to the party injured in an action at law,
> suit in equity, or other proper proceeding for redress
> . . . .

Id.; see also Haywood v. Drown, 556 U.S. 729, ___ , 129 S. Ct.

2108, 2111 & n.1 (2009); Harron v. Town of Franklin, 660 F.3d

531, 535 (1st Cir. 2011); Sanchez v. Pereira-Castillo, 590 F.3d

31, 40-41 (1st Cir. 2009) ("Section 1983 requires three elements

for liability: deprivation of a right, a causal connection

between the actor and the deprivation, and state action.").  To

the extent that Trythall asserts claims alleging that

individuals acting under color of state law have violated his

rights under federal law, his claims arise under § 1983.

II.  PIN Number

Trythall claims that jail officials failed to properly

respond to Trythall's administrative complaints regarding the

theft of his PIN number and his written requests for a new PIN

number.  "[T]here is no independent constitutional right to

state administrative grievance procedures.  Nor does the state's
voluntary provision of an administrative grievance process
create a liberty interest in that process."  <u>Boyd v. Werholtz</u>,
443 F. App'x 331, 332 (10th Cir. 2011) (internal citations
omitted).  "[T]he alleged mishandling of [the prisoner's]
grievances by persons who otherwise did not cause or participate
in the underlying conduct states no claim" under the due process
clause.  <u>Owens v. Hinsley</u>, 635 F.3d 950, 953 (7th Cir. 2011)
(inmate whose grievances were ignored had no due process claim
against indifferent prison officials).  Where an inmate has no
substantive right to have his grievances answered at all, it
stands to reason that he has no due process right to receive a
satisfactory response to a grievance.

Trythall therefore cannot assert any claim alleging the
violation of a constitutional right to have his PIN number
changed upon his filing of an administrative request, or to have
the alleged theft of a PIN number investigated to his
satisfaction in response to his written request.  Accordingly,
Trythall has failed to state any claim arising out of HCDC
officials' failure to investigate the alleged theft of his PIN
number or arising out of any delay in providing him with a new
PIN number.

III. <u>Harassment</u>

   A.   <u>Verbal Harassment</u>

   Trythall claims that officers verbally harassed him by
taunting him, calling him unattractive, making fun of his
genitals and buttocks, trying to provoke him into a physical
altercation, discussing their romantic and sexual encounters,
making an inappropriate sexual statement directed at Trythall,
and threatening to have Trythall charged with new offenses.
Corrections officers' verbal harassment of inmates does not
violate any constitutional right.  See <u>DeWalt v. Carter</u>, 224
F.3d 607, 612 (7th Cir. 2000) ("Standing alone, simple verbal
harassment does not constitute cruel and unusual punishment,
deprive a prisoner of a protected liberty interest or deny a
prisoner equal protection of the laws." (footnote and citations
omitted)); <u>Shabazz v. Cole</u>, 69 F. Supp. 2d 177, 200-01 (D. Mass.
1999) (collecting cases) (without more, verbal harassment does
not violate inmate's rights under the Fourteenth Amendment); <u>see
also</u> <u>Skinner v. Cunningham</u>, 430 F.3d 483, 489 (1st Cir. 2005)
(harassment including, threats, discourtesies, epithets, and
false charges on petty matters do not violate Eighth Amendment).

   If true, Trythall's allegations of verbal harassment
describe unprofessional, inappropriate behavior on the part of

the accused officers.  The behavior, however, does not violate
the constitution, and therefore does not suffice to support a
claim under § 1983.

IV.  Strip Search

Trythall alleges that when he arrived at Unit 2A on August
16, 2011, he was told to "strip down."  While Trythall does not
allege that the "strip down" visual search itself was improper,[4]
he does assert that it became unreasonable, and therefore
violative of the Fourth Amendment, when Sgt. Gordon, during the
search, made fun of Trythall's buttocks and genitals.

"[P]retrial detainees retain constitutional rights despite
their incarceration, including basic Fourth Amendment rights
against unreasonable searches and seizures."  Roberts v. Rhode
Island, 239 F.3d 107, 109 (1st Cir. 2001) (citing Bell v.
Wolfish, 441 U.S. 520, 545 (1979)).  Those rights, however, may
be restricted by the fact of an inmate's confinement, and by
institutional needs stemming from legitimate penological
concerns.  See Roberts, 239 F.3d at 110.  The First Circuit has

_____

[4]The First Circuit has defined a "strip search" as a visual
inspection of the inmate's naked body.  Roberts v. Rhode Island,
239 F.3d 107, 108 n.1 (1st Cir. 2001).  Applying that definition
here, the "strip down" and visual inspection described by
Trythall constitutes a "strip search."

applied the balancing test set forth in <u>Bell</u> to evaluate the
reasonableness of a strip search in the prison context.  <u>See</u>
<u>Roberts</u>, 239 F.3d at 110 (citing <u>Bell</u>, 441 U.S. at 545-46).  The
court must balance "the need for the particular search against
the invasion of personal rights that the search entails,"
considering "the scope of the particular intrusion, the manner
in which it is conducted, the justification for initiating it,
and the place in which it is conducted."  <u>Bell</u>, 441 U.S. at 559.

Trythall does not challenge the appropriateness of being
required to "strip down" upon being transferred to a new unit.
Trythall alleges that the "strip down" took place in his cell
and was conducted in the presence of male corrections officers.
Trythall does not allege that he was asked to undergo any type
of body cavity search, or that the search was unduly prolonged.
Instead, Trythall's allegations are that he was humiliated by an
officer's comments concerning Trythall's private body parts
during an otherwise unchallenged strip search.  While the
statements alleged to have been made, if true, cannot be
described as furthering any reasonable institutional objective,
as the court noted above, no constitutional claim arises from
verbal harassment alone.  Even considering that Trythall was
undergoing a "strip down" when the comment was made, Trythall's

allegations of being insulted and teased on one occasion do not describe behavior severe enough to assert a constitutional violation.  Accordingly, Trythall has failed to state a Fourth Amendment unreasonable search claim.

V.   <u>Maximum Security</u>

Trythall claims that both before and after he was convicted of stalking for phone calls allegedly placed from the HCDC, he was housed in maximum security at that facility.  Trythall alleges that he was placed in maximum security as punishment, although he concedes that he was told on each occasion that the housing placement was made to enable officers to closely monitor his behavior.

A.   <u>Pretrial</u>

To the extent that Trythall alleges that he was held in restrictive conditions of confinement that amounted to punishment while he was a pretrial detainee, Trythall attempts to state a Fourteenth Amendment due process claim.  Pretrial detainees have the right, under the Due Process Clause of the Fourteenth Amendment, not to be punished prior to conviction.  <u>See</u> <u>Surprenant v. Rivas</u>, 424 F.3d 5, 14 (1st Cir. 2005).  "Not every disability imposed during pretrial detention amounts to

'punishment' in the constitutional sense, however.  Once the Government has exercised its conceded authority to detain a person pending trial, it obviously is entitled to employ devices that are calculated to effectuate this detention."  Bell, 441 U.S. at 537.

In considering events alleged to have occurred while plaintiff was a pretrial detainee, the court must determine whether the particular restriction complained of amounted to punishment "in the constitutional sense of that word" and "whether the disability [wa]s imposed for the purpose of punishment or whether it [wa]s but an incident of some other legitimate governmental purpose."  Id. at 538.  "If a restriction appears to be unrelated to a legitimate governmental objective, and is, for example, arbitrary or purposeless, then a court may infer that it is intended to be punishment."  Lyons v. Powell, 838 F.2d 28, 29 (1st Cir. 1988); see also Ford v. Clarke, 746 F. Supp. 2d 273, 289-90 (D. Mass. 2010) (detention of pretrial detainee in disciplinary housing unit for purpose of punishment, rather than for legitimate governmental purpose, violated detainee's Fourteenth Amendment right).

In evaluating the reasonableness of imposed restrictions, the court should afford considerable deference to the

16

determinations of prison officials.  See Spratt v. R.I. Dep't of

Corrs., 482 F.3d 33, 39 (1st Cir. 2007) (citing Cutter v.

Wilkinson, 544 U.S. 709, 725 n.13 (2005) ("prison security is a

compelling state interest and . . . deference is due to

institutional officials' expertise in this area")).

> In assessing whether a specific restriction is
> reasonably related to security interests, . . .
> courts should heed our warning that such
> considerations are peculiarly within the province and
> professional expertise of corrections officials, and,
> in the absence of substantial evidence in the record
> to indicate that the officials have exaggerated their
> response to these considerations courts should
> ordinarily defer to their expert judgment in such
> matters.

Block v. Rutherford, 468 U.S. 576, 584-85 (1984) (internal

citations, quotations, and alterations omitted); see also Bell,

441 U.S. at 547 (courts should accord prison officials "wide-

ranging deference in the adoption and execution of policies and

practices" necessary to maintain institutional security).

Here, Trythall was placed in maximum security in order to

prevent his continued engagement in what prison officials

believed to be aberrant institutional behavior -- calling

Winslow from the HCDC in violation of a court order.  Trythall

was told that he was placed in maximum security so that his

behavior could be monitored, presumably to prevent further

violations of the restraining order.  No specific facts in the

complaint support Trythall's conclusory allegation that he was placed in maximum security as punishment for the offenses for which he was being held on bail.  Trythall has failed to allege that he was improperly placed in maximum security as a pretrial detainee, and therefore he has not stated a Fourteenth Amendment violation arising out of his pretrial placement in maximum security.

    B.   <u>Post-Conviction</u>

Trythall alleges that while serving his HCDC sentence, he was classified to maximum security.  In general, a sentenced inmate has no constitutional right to any particular institutional classification, unless the condition "'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'"  See <u>Wilkinson v. Austin</u>, 545 U.S. 209, 222-23 (2005) (quoting <u>Sandin v. Conner</u>, 515 U.S. 472, 484 (1995)).  As alleged by Trythall, the conditions in his housing and other consequences of his maximum security classification do not present such a departure from the "ordinary incidents" of a jail sentence that they implicate his due process rights.  See <u>Sandin</u>, 515 U.S. at 484.  Accordingly, Trythall has not stated facts sufficient to establish a constitutional claim based on his maximum security

classification.  Accordingly, the claim should be dismissed.

VI.  Claim Against Attorney

Trythall appears to assert that his attorney violated his Sixth and Fourteenth Amendment rights to a fair trial and to the effective assistance of counsel by coercing Trythall to plead guilty to crimes that Trythall claims he did not commit.  A plaintiff claiming an infringement of his civil rights under § 1983 must establish that the defendant acted under "color of any statute, ordinance, regulation, custom, or usage, of any State or Territory of the District of Columbia," in depriving plaintiff of a right secured by the Constitution or laws of the United States.  See 42 U.S.C. § 1983; Haywood, 129 S. Ct. at 2111 & n.1; Harron, 660 F.3d at 535.

"[A] public defender does not qualify as a state actor when engaged in his general representation of a criminal defendant." Georgia v. McCollum, 505 U.S. 42, 53 (1992) (citing Polk Cnty. v. Dodson, 454 U.S. 312 (1981)).  A private actor can be held to be a state actor for purposes of § 1983 only under limited circumstances, none of which are present here.  See McCollum, 505 U.S. at 54 (describing circumstances under which public defender could be deemed to be a state actor for purposes of § 1983); Blum v. Yaretsky, 457 U.S. 991, 1004 (1982); Watchtower

19

Bible & Tract Soc'y of N.Y., Inc. v. Sagardía De Jesús, 634 F.3d 3, 10 (1st Cir.) (describing circumstances under which private defendants can be treated as state actors for purposes of § 1983), cert. denied, 132 S. Ct. 549 (2011).

Trythall's allegations of unconstitutional actions by his attorney relate to the attorney's representation of Trythall in his criminal case.  Trythall's conclusory assertion that his attorney was working against him does not suffice to allege that Trythall's attorney was at any time acting under color of state authority.  Accordingly, Trythall's claims asserted against his attorney are not cognizable in a § 1983 action.

## Conclusion

For the foregoing reasons, the court finds that Trythall has failed to state any claim upon which relief may be granted. Accordingly, the court recommends that this action be dismissed in its entirety.  Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice.  See Fed. R. Civ. P. 72(b)(2).  Failure to file objections within the specified time waives the right to appeal the district court's order.  See United States v. De Jesús-Viera, 655 F.3d 52, 57 (1st Cir. 2011), cert. denied, 132 S. Ct. 1045 (2012); Sch. Union No. 37 v. United Nat'l Ins. Co., 617

F.3d 554, 564 (1st Cir. 2010) (only issues fairly raised by

objections to magistrate judge's report are subject to review by

district court; issues not preserved by such objection are

precluded on appeal).

                                                          _____

                                                    Landya McCafferty
                                                    United States Magistrate Judge

March 19, 2012

cc:  Jason Trythall, pro se

LBM:jba